## YANKOVIAK v. PUBLIC SERVICE COMMISSION.

1. ADMINISTRATIVE LAW—ORDERS—FINDINGS OF FACT.
    Generally, any order of an administrative agency must contain basic findings of fact, in order that a court reviewing the decision may know what the decision means before it must say whether it is right or wrong and in order that the agency may properly observe its jurisdictional boundaries.

2. PUBLIC SERVICE COMMISSIONS—CONTRACT MOTOR CARRIERS—PERMITS—FINDINGS—EVIDENCE.
    It was sufficient that the public service commission made its findings of fact in the language of the relevant statute in proceeding by contract motor carrier for approval of an extension

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  42 Am Jur, Public Administrative Law § 151.
[3, 4]  42 Am Jur, Public Administrative Law § 209 et seq.
[6]  13 Am Jur, Corporations, §§ 7, 8.

of its permit without annotating each finding with the evidence supporting it (CL 1948, § 477.3).

3. SAME — CONTRACT MOTOR CARRIERS — PERMITS — FINDINGS — EVIDENCE.

A reviewing court may not substitute its opinion for that of the public service commission in the matter of granting an application for extension of a contract motor carrier's permit, if there is competent evidence presented to the commission to support its finding (CL 1948, § 477.3).

4. SAME—ABUSE OF DISCRETION—STATUTES.

There must be a showing that the public service commission failed to follow some mandatory provision of the statute relative to contract motor carriers or was guilty of an abuse of discretion in the exercise of its judgment in order to declare an order relating to such carriers unlawful (CL 1948, § 477.3).

5. SAME—CONTRACT MOTOR CARRIERS—PERMITS—FINDING—EVIDENCE.

Evidence adduced in contract motor carrier's proceeding for approval of its application for an extension of its permit *held*, to support public service commission's finding that such extension would not impair the efficient public service of any common or contract carrier then adequately serving the area, hence, Supreme Court would not disturb such finding (CL 1948, § 477.3).

6. CORPORATIONS—SEPARATE ENTITY—PUBLIC POLICY.

A corporate entity will always be recognized by the courts and the law administered accordingly unless it appears that the corporation is functioning in such a manner as to violate or at least evade the law or contravene public policy.

7. SAME—COMMON STOCK OWNERSHIP—SUBTERFUGE.

Common stock ownership of more than 1 corporation is not an indicia of sham or subterfuge.

8. PUBLIC SERVICE COMMISSIONS—COMMON CARRIERS—COMMON STOCK OWNERSHIP—STATUTES.

Evidence presented in common carrier's bill to vacate public service commission's order granting an extension of contract motor carrier's permit to carry petroleum products in area serviced by plaintiff *held*, not to require finding that commission, in granting extension requested, abused its discretion notwithstanding claim that the same people who owned stock in another common carrier serving same area also owned stock in the contract carrier involved and there was some exchange of equipment, functioning in a dual capacity not being proscribed by statute (CL 1948, § 477.3).

9. COSTS—PUBLIC QUESTION—EXTENSION OF CONTRACT CARRIER'S
   PERMIT.
   No costs are allowed in suit to vacate public service commission's
   order extending contract motor carrier's permit to carry pe-
   troleum products in area served by plaintiff common carrier,
   a public question being involved (CL 1948, § 477.3).

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted April 9, 1957. (Docket No. 21, Calendar No.
47,154.) Decided October 7, 1957.

Bill by J. M. Yankoviak against Michigan Public
Service Commission to vacate order granting author-
ity to Tank Transport, Inc., to extend its operations
as a contract carrier. Tank Transport, Inc., inter-
venes as party defendant. Bill dismissed. Plaintiff
appeals. Affirmed.

*Williams & Jenkins* and *McGinn & Lower (James
W. Williams,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund
E. Shepherd,* Solicitor General, *Robert A. Deren-
goski* and *John E. Tormey,* Assistants Attorney Gen-
eral, for Public Service Commission.

*Rex Eames (Sullivan, Elmer, Eames & Moody,* of
counsel), for defendant Tank Transport, Inc.

SMITH, J. The plaintiff and appellant in this case
describes himself as "an individual doing business
under a certificate issued by the Michigan public
service commission, as a common motor carrier, re-
stricted as to commodities." He has authority to
haul "petroleum and petroleum products, in bulk, in
tank equipment, between Alpena, Cheboygan and
various points on and north of US-10 and M-20,
excepting Bay City and Midland, INTRASTATE."

Defendant Tank Transport, Inc., is a Michigan corporation. There is common ownership of stock to some degree between Superior Transport Company and Taylor Transport, Inc., both common carriers, neither of which companies is a party hereto, and defendant Tank Transport, Inc., equipment is shared by all 3 companies in common. Tank Transport is a contract carrier of petroleum and petroleum products. It had been hauling for Gulf Refining out of Bay City for a period of about 3 years. In so doing it had served Cheboygan, for Gulf, as a part of its area. Gulf, however, was apparently dissatisfied with such a method of distribution. At any rate, it built a new marine terminal at Cheboygan and planned to serve out of the Cheboygan terminal substantially the same area that had theretofore been served out of Bay City. The services of Tank Transport having been satisfactory in the Bay City area, Gulf asked Tank Transport to file with the defendant Michigan public service commission an application for an extension of its authority in order that it might carry petroleum products for Gulf from Cheboygan to various Michigan points.

Plaintiff conceived himself aggrieved thereby. Tank Transport's proposed extension included the territory he was authorized to serve and the commodities he was authorized to transport. Consequently he opposed the requested grant of authority to Tank Transport. The commission, after hearing, granted the applicant its requested extension of operations, authorizing the transportation from Cheboygan to various Michigan points in the lower peninsula. Plaintiff thereupon filed a bill in the circuit court for the county of Ingham, in chancery, to set aside the commission's order. A hearing was held in such court, with introduction of evidence both by the defendant Michigan public service commission, and the intervening defendant Tank Transport,

Inc. Decree was entered affirming the commission's order, from which appellant takes a general appeal.

The appellant's principal contention on appeal relates to an asserted fatal defect in the commission's order of November 15, 1955, which order read as follows:

### "CONTRACT MOTOR CARRIER PERMIT

"The above entitled application having come on to be heard and the commission being fully advised in the premises; it finds that the proposed operation will not impair the public service of any authorized common or contract motor carrier; the vehicles proposed to be operated may be operated without injury or damage to the highways; the proposed use of the highways will not unreasonably interfere with the use of the highways by the general public; the business to be done conforms with the statutory definition of a contract carrier; accordingly

"IT IS ORDERED, in accordance with the provisions of PA 1933, No 254, as amended, that applicant be and hereby is granted an extension of operations, authorizing the transportation of:

"INTRASTATE:

"Petroleum and petroleum products in tank trucks and in bulk for Gulf Refining Company only between Cheboygan, Michigan, and points within 5 miles thereof on the one hand, and on the other, various Michigan points in the lower peninsula only."

This order, it is asserted, does not contain adequate basic findings of fact. The appellee, Michigan public service commission, does not deny that, "as a general rule, any order of the administrative body must contain basic findings of fact," but asserts that such are here found. We will proceed on the basis of the argument thus framed.

We do not propose, however, to undertake a classification of different kinds of facts, with appropriate definitions for each: jurisdictional, specific, evi-

dentiary, and so forth. These problems of grammar and the dictionary have bedeviled administrative law for years. What the commission had before it was an application by Tank Transport for an extension of its operations. In a realistic sense, the ultimate question before it, the "ultimate finding" (*e. g.*, *United States* v. *Pierce Auto Freight Lines, Inc.*, 327 US 515, 533 [66 S Ct 687, 90 L ed 821]), to be made was whether or not the extension would be granted. The decision was that it should. We might note that if the commission's order had been content merely with stating the ultimate holding, the granting of the extension, without more, we would have had the same situation as in the case of *Chicago Railways Co.* v. *Commerce Commission*, 336 Ill 51 (167 NE 840, 67 ALR 938), relied upon by appellant. There the order simply recited that "public convenience and necessity" required certain routes. But in the order before us the commission recites also its reasons. Are they sufficient? That involves the further question, Sufficient for what? Why, indeed, should it be required that any facts at all be stated?

One of the principal reasons for requiring findings is in order to facilitate judicial review. Cardozo, J., phrased it thus: "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." *United States* v. *Chicago, M., St. P. & P. R. Co.*, 294 US 499, 511 (55 S Ct 462, 79 L ed 1023). Or, as Davis, in his text on Administrative Law, § 162, p 527, puts it: "If there were no law requiring findings, judges struggling with masses of evidence and hazy findings, trying their best to discover whether the agency has applied the proper principles, would surely invent such a requirement." But there are additional considerations, equally important, if not more so. The administrative agency must properly observe its jurisdictional boundaries, and, within those boundaries, must act

with care on those matters committed by our people to their charge. The requirement, then, of findings of basic facts, which may be imposed either expressly by statute or implied by law, not only aids judicial review but serves a useful function in the administrative process itself.

What, then, are the basic facts required to be shown in order to justify the commission's ultimate conclusion with respect to this contract carrier's application? The applicable statute* lists them with clarity: that the proposed operation not impair efficient existing service, that it not damage the highways, that it not unreasonably interfere with the public's use of the highway, and, finally, that the applicant's business be in fact that of a contract carrier.

These basic facts the commission found. We are not prepared to say that such findings of basic facts are bad because phrased in the language of the statute, nor, on the other hand, are we prepared to say that the commission must support its statutorily-required basic facts with a recitation of the evidentiary matters upon which it came to its conclusion, or with its rulings upon controverted specific facts. "The commission is not compelled to annotate to each finding the evidence supporting it." *United States* v. *Pierce Auto Freight Lines, supra,* 529. It is of importance that a proper hearing be held, *L. A. Darling Company* v. *Water Resources Commission,* 341 Mich 654, and pertinent evidence adduced, but it is not of the essence that the commission's findings of basic facts follow any particular form, that they are bad if they follow the statutory language but good if there is apt paraphrase. The *Darling Case, supra,* in no

---

* Motor carrier act, PA 1933, No 254, art 3, § 3 (CL 1948, § 477.3 [Stat Ann § 22.550]). The administrative procedure act, PA 1952, No 197, as amended (CLS 1954, § 24.101 *et seq.,* Stat Ann § 3.560 [21.1] *et seq.*), does not apply to the Michigan public service commission.

way contravenes these principles. In that case the requirements of procedural due process were completely lacking in the commission's hearing and valid findings of fact could not result from a hearing itself invalid.

But appellant further asserts that "there was not competent substantial evidence in the record to support the basic findings which the commission is required to make and to sustain a determination 'that the proposed operation will not impair the public service of any authorized common or contract motor carrier for hire' and 'the business to be done conforms with the statutory definition of a contract motor carrier.' " We approach these evidentiary questions having in mind our holding in *Giaras* v. *Michigan Public Service Commission*, 301 Mich 262, 269, to the effect that:

"It is a well-established principle of law that if there is competent evidence presented to the commission in favor of granting such a certificate as well as evidence in opposition thereto, the court will not substitute its opinion and judgment for that of the commission. To declare an order of the commission unlawful there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment."

Much of the controversy in this area, and much of appellant's argument on appeal, involve the repeated assertion that "the business to be done by Tank Transport, Inc., does not conform with the statutory definition of a contract carrier, because Superior Transport, Inc., owned and controlled Tank Transport, Inc., and so dominated Tank Transport, Inc., that Tank Transport, Inc.'s operations are in fact those of Superior. Superior Transport, Inc., is a common carrier. If appellant's contentions are valid, Tank Transport, Inc., is not doing business as

a contract carrier." The evidence presented, however, does not justify a finding on our part that the commission, in granting the extension requested, was guilty of an abuse of its discretion in the exercise of its judgment despite the assertions made. The record shows some uncertain degree of stock ownership common to Mr. and Mrs. Downer, and some degree of common use of equipment by the 3 companies, but it cannot be said because thereof that domination and control of one company by another follow as a matter of course, or that the commission must so find at the risk of abusing its discretion. As we said in *Fors* v. *Farrell,* 271 Mich 358, 370:

"Corporate entity will always be recognized by the courts and the law administered accordingly unless it appears that the corporation is functioning in such a manner as to violate or at least evade the law or contravene public policy."

Common stock ownership is not an indicia of sham or subterfuge. Moreover, it should be observed, that even if the corporate veil had been pierced by the commission in this case, as appellant asserts it should have been, his success in opposition would not have been inevitable, for, as we said in *G & A Truck Line, Inc.,* v. *Public Service Commission,* 337 Mich 300, 308:

"We can see no objection, from an administrative standpoint, to the consolidation for purposes of convenience of such authority. Under many circumstances a common carrier might also desire to act as a contract carrier. Nothing in the law prohibits such dual capacities and no detriment to the public interest can result from the combined activities. Whether such authority is shown by 1 certificate or several is a matter of administrative detail."

The commission's conclusions, including its finding that the proposed operation, involving a new service

in the area, would not impair the efficient public serv-. ice of any common or contract carrier then adequately serving the area, were based upon sufficient competent evidence, were properly upheld by the circuit court, and will not be disturbed by this Court.

Decree affirmed. No costs, a public question.

Dethmers, C. J., and Sharpe, Edwards, Voelker, Kelly, Carr, and Black, JJ., concurred.